UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **FAYEZ NASSRI & JAMES MORRIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-853** |
| **INLAND DREDGING COMPANY** | **SECTION "K"** |

### ORDER AND OPINION

Before the Court are cross motions for summary judgment filed on behalf of Plaintiffs Fayez Nassri and James Morris and Defendant Inland Dredging Company ("Inland"). Parties seek a determination of the IDC-120's vessel status. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies Plaintiffs' "Motion for Partial Summary Judgment" (Doc. 19) and grants Defendant's "Motion for Partial Summary Judgment" (Doc. 40).

I.  Background

In the early morning hours of December 8, 2010, James Morris, while driving his pleasure boat in which Fayez Nassir was a passenger, struck a pipeline pontoon, later identified as the IDC-120 owned by Inland. As a result of the accident, both Mr. Nassri and Mr. Morris allegedly sustained injuries.

Mr. Nassri and Mr. Morris filed suit in state court against Inland and its insurer for their damages alleging negligence under both Louisiana law and the general maritime law. Inland

1

removed the suit to federal court. In its answer, Inland asserted, among other defenses, the protection of the Limitation of Liability Act.[1]

## II. Law and Analysis

Pivotal to both motions for partial summary judgment is whether the IDC-120 is a "vessel" for purposes of the Limitation of Liability Act.[2]

### a. What is the Definition of a "Vessel?"

Historically, the term "vessel" lacked a uniform definition. Confusion existed as to whether the definition of a "vessel," for purposes of admiralty jurisdiction, differed between statutory liability regimes, such as, the Jones Act,[3] the Limitation of Liability Act,[4] and the Longshore and Harbor Workers' Compensation Act (LHWCA).[5] In part, this ambiguity stemmed from a lack of incorporating a definition of "vessel" into those statutes. Furthermore, case law developed that provided conflicting definitions of "vessel" under the different statutory schemes.[6]

In *Stewart v. Dutra*, the United States Supreme Court adopted a uniformly broad definition of "vessel."[7] There, a marine engineer "was seriously injured while repairing a scow's engine" that was tied to a dredge, the *Super Scoop*. The *Super Scoop* had certain characteristics common to seagoing vessels, but lacked others. The Supreme Court addressed whether the

---

[1] 46 U.S.C. § 30501, et seq, Rule F of the Supplementary Rules for Certain Admiralty and Maritime Claims.
[2] *Id.*
[3] 46 U.S.C.A. § 30104.
[4] *Id.* §30501-12.
[5] 33 U.S.C. §§901-944, 948-950.
[6] *Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.*, 271 U.S. 19, 20 (1926) (discussing the Limitation of Liability Act); *Richendollar v. Diamond M Drilling Co., Inc.*, 819 F.2d 124, 125 (5th Cir. 1987) (discussing the Jones Act and LHWCA).
[7] *See Stewart v. Dutra Const. Co.*, 543 U.S. 481, 497 (2005).

*Super Scoop* qualified as a "vessel" for purposes of the LHWCA. Clearly, determining vessel status required a definition of the term "vessel."

The Supreme Court noted that Congress "did not define the term 'vessel' in the LHWCA" or Jones Act.[8] However, Congress had provided a statutory definition of "vessel" in section 3 of the Revised Statues of 1873.[9] Specifically, 1 U.S.C. § 3 states: "a vessel includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."[10] Moreover, the Supreme Court observed that "[section] 3 continued to supply the default definition of 'vessel' throughout the U.S. Code, 'unless the context indicates otherwise.'"[11] Thus, the Supreme Court held that "[section] 3 defines the term 'vessel' for purposes of the LHWCA."[12]

*Stewart* replaced the "primary purpose" and "in navigation" requirements implemented by the First Circuit Court of Appeals in favor of a "practically capable" requirement.[13] The Supreme Court made clear that section 3 only requires "that a watercraft be 'used, or capable of being used, as a means of transportation on water' to qualify as a vessel."[14] Furthermore, the Court "stated that a watercraft need not be in motion to qualify as a vessel under [section] 3."[15] Thus, in *Stewart* the focus of section 3 shifted to answering the inquiry of "whether the

---

[8] *Id.* at 488-89.
[9] *Id.* at 489. ("Section 3's definition, repealed and recodified in 1947 as part of the Rules of Construction Act, 1 U.S.C. § 3, has remained virtually unchanged from 1873 to the present.").
[10] *Id.* at 489-90 (citing 1 U.S.C. § 3).
[11] *Id.* at 490 (citing 1 U.S.C. §1).
[12] *Id.* at 497.
[13] *Id.* at 487-88. The "primary purpose" requirement stated that the primary purpose of the vessel must be navigation or commerce. The "in navigation" requirement stated that a vessel is only a vessel, for purposed of LHWCA, when the vessel is in actual transit. *Id.*
[14] *Id.* at 496.
[15] *Id.*

watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one."[16]

*Stewart* imposed an important caveat to section 3's definition by concluding that the *Super Scoop* was a "vessel," as defined under section 3, because it "was not only 'capable of being used' to transport equipment and workers over water- it was used to transport those things" at the time of the engineer's injury.[17]  Accordingly, *Stewart* "significantly enlarged the set of unconventional watercraft that are vessels."[18]

### b. Is the IDC-120 a "Vessel" for Purposes of the Limitation of Liability Act?

Congress failed to define "vessel" in the Limitation of Liability Act.[19]  Like in *Stewart*, this statutory ambiguity must be resolved.[20]  Historically the Supreme Court relies on section 3 to define the term "vessel" under the Limitation of Liability Act.[21]  Although *Stewart* did not address "vessel" status under the Limitation of Liability Act, it furnished a framework for interpreting section 3 that applies in analyzing whether the IDC-120 qualifies as a "vessel" subject to the Limitation of Liability Act.  Thus, for purposes of the Limitation of Liability Act, "vessel" is defined by section 3 as interpreted by *Stewart*.

---

[16] *Id.*
[17] *Id.* at 495.
[18] *Holmes v. Atl. Sounding Co., Inc.*, 437 F.3d 441, 448 (5th Cir. 2006) (holding a floating dormitory to be a vessel). *See also Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 144 (2d Cir. 2005) (holding a bucket dredge to be a vessel under section 3); *Bunch v. Canton Marine Towing Co., Inc.*, 419 F.3d 868, 869 (8th Cir. 2005) (holding that "a cleaning barge moored to the bed of the Missouri River" was a vessel); *City of Riviera Beach v. That Certain Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet In Length*, 649 F.3d 1259, 1269 (11th Cir. 2011) *cert. granted*, 132 S. Ct. 1543, 182 L. Ed. 2d 160 (U.S. 2012) (holding that a houseboat with no engine, raked bows, cleats for towing, or a history of transportation was a vessel under section 3 because it was "practically capable of transportation over water by means of a tow, despite having no motive or steering power of its own").
[19] 46 U.S.C.A. § 30505.
[20] *See Stewart v. Dutra Const. Co.*, 543 U.S. 481, 489 (2005).
[21] *Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.*, 271 U.S. 19(1926).

As discussed above, section 3 mandates two essential characteristics of a "vessel:" first, it must be a "watercraft or other artificial contrivance;" second, it must be "used, or capable of being used, as a means of transportation on water." Furthermore, *Stewart* puts forth the primary test for determining vessel status under section 3: "whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one."[22]

The IDC-120 was a hollow metal pontoon tank constructed to float dredge pipe.[23] Thus, it obviously qualifies as an "artificial contrivance," thereby satisfying the first prong of section 3. The IDC-120 also fulfills the second prong of section 3 as construed by the Supreme Court in *Stewart*; it can actually be used "as a means of transportation on water." Defendant actually used the IDC-120 to transport pipe. While floating, the IDC-120 oscillated from side to side due to changing tides and the lack of a permanent mooring. Furthermore, tender boats moved it short distances around worksites. The Court regards these movements as evidence of actual transportation. Moreover, the IDC-120 could practically be used as a "floating dock or landing."[24] Thus, the Court concludes that Defendant actually used the IDC-120 "as a means of transportation."

Plaintiffs point to the IDC-120's lack of objective characteristics typical of a vessel in asserting that the IDC-120 is not a vessel. *Stewart* preempted this historic approach to determining vessel status. *Stewart* requires only that a vessel be "practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment."[25] For these reasons, the Court holds that the IDC-120 is "actually capable of maritime transportation,

---

[22] *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 496 (2005).
[23] Doc. 40, Ex. A.
[24] Doc. 40, Ex. A.
[25] *Stewart*, 543 U.S. at 497.

regardless of its primary purpose or state of transit at a particular moment" and is therefore a "vessel" for purposes of the Limitation of Liability Act. Accordingly,

**IT IS ORDERED** that the Court DENIES Plaintiffs' motion for partial summary judgment;

**IT IS FURTHER ORDERED** that the Court GRANTS Defendant's motion for partial summary judgment.

New Orleans, Louisiana, this 6th day of November, 2012.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE