UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FAYEZ NASSRI AND                                    CIVIL ACTION
JAMES MORRIS

VERSUS                                              NO. 11-853

INLAND DREDGING COMPANY                             SECTION "K"(1)

## ORDER AND OPINION

Before the Court is the "Motion for Partial Summary Judgment - Exoneration From and/or Limitation of Liability," filed on behalf of plaintiff Fayez Nassri (Doc. 96). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, DENIES the motion.

Background

The following facts are undisputed:

- Inland Dredging Company ("Inland") was the owner *pro hac vice* of the IDC-120 at all relevant times.
- On December 8, 2010, Inland was performing dredging operations under authority of an Army Corps of Engineers contract, #W912P8-10-C-0127 on the Intercoastal Waterway within Iberville Parish, Louisiana.
- In connection with those dredging operations, Inland deployed the KELLY L, two tugs (The CARDINAL and the INLAND TIGER), a crane barge, dredging pipe, and pipe tanks, including the IDC-120.
- Robert D. Johnston, an employee of Inland, served as the project manager for the dredging operations on December 7-8, 2010.
- On December 8, 2010, Tim Dyer, an Inland employee, also served as a project manager assigned to the Intercoastal Waterway Dredging project.
- IDC-120 is a 6' x 10' rolled steel pipe tank primarily utilized to support dredging pipe during dredging operations.
- "On December 7, 2010, the IDC-120 was removed from a

- hopper barge on the Intercoastal Waterway and discovered to be in need of repair because a cleat had broken off." Doc. 96-3, p. 2.
- Sam Ford, Jr., a deck captain with Inland, moored the IDC-120 to a crane barge located at the dredging site.
- On December 8, 2010, at approximately 5:30 a.m., James Ernest Morris, Jr. and his passenger Fayez Nassri, were southbound on the Intercoastal Waterway, 0.75 miles below Bayou Sorrell Locks in Mr. Morris's recreational fishing boat when the boat struck the IDC-120, which was no longer moored to the crane barge.
- Fayez Nassri was ejected from Mr. Morris's boat.
- "On December 10, 2010, Inland Dredging Company held a safety meeting where the topic was '[p]roperly securing the equipment in the fleeting area is vital to the safety of the crew, public and the equipment itself.'" Doc. 96-3, p. 3.
- Tim Dyer knew prior to December 8, 2010 of other instances when Inland's moored equipment had come "united during the night at the fleeting area." *Id.*
- 

As a result of the accident, Mr. Nassri allegedly sustained a number of injuries.

Mr. Nassri filed suit in state court against Inland and its insurer for his damages alleging negligence under both Louisiana law and the general maritime law. Inland removed the suit to federal court. In its answer, Inland asserted, among other defenses, the protection of the Limitation of Liability Act, 46 U.S.C. §30501, et seq, Rule F of the Supplementary Rules for Certain Admiralty Claims.

Plaintiff filed a motion for summary judgment seeking a finding that "as a matter of law the Limitation of Liability Act, is unavailable to the Defendant Inland Dredging Company, because it had knowledge of and was in privity with the negligence over the phase of the business out of which the injury occurred. Plaintiff urges that there is no disputed material fact that Inland failed to exercise reasonable diligence in inspecting the IDC-120, that Robert David Johnson and Robert Goodwin were managing officers of Inland, and that Johnson and Goodwin knew that the unlit IDC-

2

120 was to be moored overnight to the crane barge, "without a reasonable watch schedule or the posting of a perimeter sentry boat." Id.

## Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby,*

3

*Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

Law and Analysis

A shipowner's liability may be limited to the value of the vessel at the termination of the voyage plus "pending freight" "only if he shows that the fault causing the loss occurred without his 'privity and knowledge.'" Thomas Schoenbaum, Admiralty and Maritime Law, §15-6 (5th ed. 2011), citing 46 U.S.C. §30305. It is well established that:

> The determination of whether a shipowner is entitled to limitation involves a two-step process. Initially, the court must determine which acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the shipowner had knowledge or privity of the same acts of negligence or conditions of unseaworthiness.

*Verrett v. McDonough Marine Service*, 705 F.3d 1437, 1444 (5th Cir. 1983); *In re:Port Arthur Towing Co.,* 42 F.2d 312, 317 (5th Cir. 1995) (limitation proceeding generally comprises two-step process); *Farrell Lines, Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976) (determination of shipowners entitlement to limitation employs a two-step process). To state it another way, once the party seeking damages satisfies the initial burden of proving negligence or unseaworthiness, the burden of proof shifts to the shipowner to prove the lack of privity and knowledge. Where, as here, there has not been a finding of negligence or unseaworthiness, it would be premature to determine whether the shipowner had privity and knowledge of the negligence or the unseaworthy condition.

4

Therefore, the Court denies plaintiff's motion as premature. However, as the Court previously noted in its Order and Reasons denying plaintiff's "Motion for Partial Summary Judgment - Presumption of Negligence" (Doc. 134), defendant faces a considerable challenge in establishing that as the owner of a drifting vessel it was not negligent in a manner that was a proximate cause the collision. Equally challenging is defendant's burden to prove its lack of privity and knowledge.

New Orleans, Louisiana, this 16th day of January, 2013.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

5

Case 3:11-cv-00853-SRD-SS   Document 136   01/16/13   Page 5 of 5